# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 97-33 |
| ) | |
| DENNIS ROCKOT ) | |

## MEMORANDUM OPINION

Dennis Rockot ("defendant") appeared before this court for a show cause hearing on October 30, 2013, pursuant to a petition for warrant or summons for offender under supervision filed by United States Probation Officer Alexis Zellefrow (Document No. 81). Upon due consideration of the testimony elicited at the show cause hearing, as well as the parties' post-hearing briefs, for the following reasons, the government's request for revocation will be denied and the petition alleging the violations will be dismissed.

On February 25, 1997, a grand jury returned a six-count indictment against defendant charging him with transportation of a minor for illegal sexual activity (Count One); sexual exploitation of a minor (Counts Two and Three); and, transportation, receipt and possession of material depicting the sexual exploitation of a minor (Counts Four, Five and Six, respectively). Defendant subsequently entered a guilty plea at Counts One, Two and Four.[1] On October 22, 1997, defendant was sentenced to a term of imprisonment of 188 months, consisting of 120 months at each of Counts One and Two, to be served concurrently, and 68 months at Count Four to be served consecutively, to be followed by a term of supervised release of 3 years at each count, all to be served concurrently.

---

[1] Counts Three, Five and Six were dismissed upon government motion at sentencing.

While on supervised release it was directed that defendant shall not commit another federal, state or local crime and shall comply with the standard conditions of supervision adopted by the court as well as certain additional special conditions, including, *inter alia*, that he shall participate in a sex offender treatment program. On June 7, 2010, pursuant to a petition on supervised release filed by the probation office and defendant's signed waiver of hearing, the conditions of supervision were modified to include, *inter alia*, compliance with the United States Probation/Pretrial Services Office's Computer Restriction and Monitoring Program. In addition, the previously imposed condition that defendant shall participate in a sex offender treatment program was expanded to include a provision requiring that he abide by all rules, requirements and conditions of that treatment program, including submission to polygraph testing. On September 17, 2010, defendant was released to supervision.

On June 9, 2011, pursuant to a request for modifying the conditions of supervision with consent of the offender and defendant's signed waiver of hearing, the conditions of supervision were modified to add a condition that defendant be placed on home detention with electronic monitoring for a term of up to 18 months based upon his "admitted violations of supervised release which included unsupervised contact with a minor and unauthorized use of a computer." On November 14, 2012, pursuant to another request for modifying the conditions of supervision with consent of offender and defendant's signed waiver of hearing, the period of home detention was extended for 6 months based upon "inconclusive" polygraph results. On December 3, 2012, the terms of supervision were modified yet again pursuant to another request for modification and defendant's signed waiver of hearing to prohibit defendant from accessing any computer equipment or any "on-line" computer service at any location due to

2

AO 72
(Rev. 8/82)

"defendant's admitted violations of supervised release which include removal of the computer monitoring software and viewing adult pornographic images, which are prohibited by the treatment provider."

On August 15, 2013, the probation office filed the pending petition alleging that defendant had been unsuccessfully discharged from sex offender treatment on July 22, 2013, due to his failure to be honest with the treatment provider and group members, in violation of the condition of supervision that he shall participate in a mental health treatment and/or sex offender treatment program, and further alleging that defendant had removed the computer monitoring software from his computer in November 2012 and had accessed child pornography, in violation of the conditions of his supervision that he shall not use a computer to access child pornography and that he shall abide by the provisions of the Computer Restriction and Monitoring Program.

At the show cause hearing on October 30, 2013, the government presented the testimony of Rita Lukas, the President and director of defendant's sex offender treatment provider, the Forensic Associates for Assessment Consultation and Treatment, Inc. ("FAACT"), and also that of United States Probation Officer Muhammad AbdoolRaman. As ordered, defendant filed a post-hearing brief in opposition to revocation of supervised release, the government filed a brief in support of revocation, and defendant filed a reply.

Pursuant to 18 U.S.C. §3583(e)(3), the court may revoke a term of supervised release and require a defendant to serve in prison all or part of the term authorized by statute for the original offense, without credit for time previously served on post-release supervision, if it finds by a preponderance of the evidence that the defendant violated a condition of supervision.

AO 72
(Rev. 8/82)

Here, the petition alleges that defendant violated three conditions of his supervision: (1) that he shall participate in a mental health treatment program and/or sex offender treatment program approved by the probation officer; (2) that he shall not use a computer to access child pornography; and, (3) that he shall abide by the provisions of the Computer Restriction and Monitoring Program. The government since has withdrawn the allegation that defendant used a computer to access child pornography. Accordingly, the issue before the court is whether the government has proven by a preponderance of the evidence that defendant failed to participate in a sex offender treatment program or failed to abide by the provisions of the Computer Restriction and Monitoring Program, or both, as alleged in the pending petition.

Before determining whether any violation has occurred, however, the court first must address defendant's argument that he did not validly waive his right to a hearing and the assistance of counsel prior to the June 7, 2010, modification of supervision which added the two conditions which he now is alleged to have violated. Because these conditions were imposed in violation of his right to due process, he argues, revocation would not be appropriate regardless of whether or not he may have violated them. The court finds this argument to be without merit.

Because proceedings to revoke supervised release may result in a "loss of liberty," they are subject to due process considerations. United States v. Taylor, 519 Fed.Appx. 85, 87 (3d Cir. 2013); see also Morrissey v. Brewer, 408 U.S. 471, 485 (1972). The minimum due process requirements for revoking or modifying supervised release have been codified in Rule 32.1 of the Federal Rules of Criminal Procedure. Taylor, 519 Fed.Appx. at 89; United States v. Poindexter, 444 Fed.Appx. 580, 582 (3d Cir. 2011). "The rights provided by Rule 32.1 may

AO 72
(Rev. 8/82)

be waived, so long as the waiver is signed knowingly and voluntarily." Poindexter, 444 Fed.Appx. at 582.

Rule 32.1(c)(1) provides that "[b]efore modifying the conditions of ... supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." However, a hearing is not required in certain enumerated instances, including when "the person waives the hearing." Rule 32.1(c)(2)(A).

In this case, prior to the June 2010 modification at issue, defendant signed a written waiver of his right to a hearing. (Document 69). The waiver form explicitly advised defendant that he was "entitled by law to a hearing and assistance of counsel before any unfavorable change may be made" to the conditions of his supervision. It further advised him that he had the right to be represented at a hearing by counsel of his own choosing and that he could request that counsel be appointed for him if he could not afford to retain one. The waiver states: "I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel" and that "I agree to the following modification of my Conditions of ... Supervised Release ...." The two modifications at issue in this case are enumerated in the waiver. The waiver form bears defendant's signature as well as the signature of a witness.

The court is satisfied that the plain language of the waiver form expressly advising defendant that he had a right to a modification hearing with the assistance of counsel and that he understood that he was waiving those rights, along with defendant's signature on that waiver form, are sufficient to establish that defendant knowingly and voluntarily waived those rights. Defendant does not allege that he was coerced into signing the document and there is no

5

AO 72
(Rev. 8/82)

evidence that he did not understand the rights that he was waiving or that the language used in the waiver was unclear or ambiguous. See Poindexter, 444 Fed.Appx. at 582-83.

Defendant's reliance on United States v. Manuel, 732 F.3d 283 (3d Cir. 2013) is misplaced. Therein, the Third Circuit Court of Appeals held that a defendant's waiver of his right to counsel at a supervised release *revocation* hearing under Rule 32.1(b) is effective where the totality of the circumstances demonstrates that the defendant's waiver was made knowingly and voluntarily. Manuel, 732 F.3d at 291-92. The court found that defendant's waiver was knowing and voluntary in that case where the district court engaged in a colloquy with the defendant advising him, *inter alia*, of the strategic disadvantages of proceeding *pro se* at the revocation hearing and that he would bear responsibility for any technical or strategic errors he might make while representing himself, while also strongly recommending that he keep his attorney. Id. at 291. Defendant argues that similar warnings also should be issued to effectuate a waiver of a hearing and counsel prior to a *modification* of the conditions of supervised release. The court disagrees.

The United States Supreme Court long has recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481. Because the revocation of supervised release presents a greater possibility for a "loss of liberty," Rule 32.1 recognizes that "more" process is due at the revocation stage than at the modification stage. Whereas Rule 32.1(c)(1) provides only for a hearing with the right to counsel and an opportunity to make a statement and present information in mitigation, Rule 32.1(b)(2) goes farther and additionally entitles the individual to written notice of the alleged violation, disclosure of evidence against the person, and an opportunity to appear, present

6

evidence and question adverse witnesses in addition to a hearing with the right to counsel and an opportunity to make a statement and present information in mitigation.

Here, the court is satisfied that the more detailed colloquy found sufficient in Manuel to satisfy due process prior to *revocation* of supervised release was not required prior to the *modification* of defendant's supervised release conditions, and that the admonitions set forth in the written waiver which defendant signed were adequate to satisfy due process in this particular situation. As noted, there is no evidence that defendant was coerced into signing the waiver or that he did not understand it. Poindexter, supra. Accordingly, under the totality of the circumstances, the court finds that defendant's waiver of his right to a hearing and counsel prior to the June 2010 modification was knowingly and voluntarily made.[2]

Having determined that the conditions of supervision that defendant is alleged to have violated properly were imposed, the court now turns to the issue of whether the government has proven by a preponderance of the evidence that defendant in fact violated either, or both, of those conditions. Upon review, this court finds that the government has not met that burden as to either violation as they are alleged in the petition.

The government first contends that defendant violated the condition of his supervised release that he "shall participate in a ... sex offender treatment program, approved by the probation officer" and that he "shall abide by all program rules, requirements, and conditions of

---

[2] Defendant also refers to United States v. Murray, 692 F.3d 273 (3d Cir. 2012), in which the appellate court remanded the case to the district court for additional explanation of its decision to modify the terms of supervised release, in order to "illustrate the value of the Rule 32.1 right to counsel and a hearing." The "value" of defendant's rights under Rule 32.1(c) is not in dispute. What also is indisputable, however, is that those rights, regardless of how valuable, knowingly and voluntarily may be waived. Unlike Murray, who opted for a hearing and was represented by counsel, defendant in this case knowingly and voluntarily waived his right to a modification hearing and the assistance of counsel.

7

the sex offender treatment program, including submission to polygraph testing, to determine if he is in compliance with the conditions of release." The petition alleges that defendant violated this condition when he was unsuccessfully discharged from his sex offender treatment program "due to his failure to be honest with his treatment provider and group members." (Government Exhibit 1).

The government's position is that defendant failed to participate in good faith in his sex offender treatment as evidenced by his "repeated failures to make full, honest and timely disclosures" of risk behaviors unless confronted with questionable polygraph results. To prove this violation the government presented the testimony of Rita Lukas. Lukas testified that she first saw defendant in October of 2010 and that she provided 24 individual therapy sessions from July 30, 2012, to July 22, 2013, and facilitated over 50 group therapy sessions in which defendant participated between October 11, 2010, and July 22, 2013. (R. 10). She further noted that two other therapists, Jennifer Beard and Shannon Delaney, acted as individual therapists for defendant for a total of 52 sessions between 2010 and 2012. (R. 11). In addition, Lukas testified that defendant submitted to five polygraph examinations as part of the treatment program. (Id.)

Lukas testified that defendant's first polygraph was conducted on May 23, 2011, by Thomas Lazicki, who reported that "deception was indicated." (R. 14). When confronted with the results, Lukas testified that defendant pleaded to stay in treatment and promised to be "open and honest going forward." (R. 15). After addressing defendant about a polygraph conducted by Lazicki on March 13, 2012, Lukas stated that defendant admitted that he had used an internet service to purchase videos of children for the purpose of self-gratification. (R. 18).

AO 72
(Rev. 8/82)

Lukas also testified that she met with defendant on December 3, 2012, regarding the results of another polygraph examination administered by Scott Evans on November 5, 2012. (R. 20-22). At that meeting, she stated that defendant admitted that he "went wild for three days" when he realized that the monitoring software was not working after he had his computer repaired by Best Buy. (R. 21-22).

Lukas further testified as to the discharge summary that she prepared on July 22, 2013, in which she indicated her belief that defendant's participation in the program was "superficial" and recorded that he was discharged from the program with a status of "unsuccessful" due to "his failure to be honest with the treatment provider and group members," and further noting that defendant's "treatment goals were not attained." (Govt. Ex. 1). She testified that defendant's disclosure of his behavior "always would occur after a test" and that only then would he reveal that he had engaged in high risk behaviors that he should have disclosed in prior treatment sessions. (R. 32-33).

As examples, Lukas noted disclosures by defendant on June 27, 2011, indicating that he was having "sexual thoughts of children daily" and that he had purchased three books with pictures of children within 30 days of his release from prison and indicated that he had not disclosed this information previously because he "didn't want to show others that [he] was actively pursuing sexual thoughts of children." (R. 33-34). Then, on July 22, 2013, he told group members that he was engaging in behaviors that he had never told them about, including masturbating to images of little girls on a reality show called "Dance Moms." (R. 34). Lukas also testified that defendant was not being honest when he indicated he was confused about the meaning of pornography. (R. 37).

9

On cross-examination, Lukas summarized her reasons for discharging defendant from the program: "My reason to discharge him was based on a fairly lengthy period in which we played this ongoing manipulative game of now this is the truth; I did this, now this is the truth; I did this, now this is the truth. It was ... an ongoing pattern, and I could not see that his behavior had changed over a long course of time." (R. 80).

Upon careful consideration of Lukas's testimony and the arguments of the parties, this court cannot find by a preponderance of the evidence that defendant failed to <u>participate</u> in a sex offender treatment program as required under the terms of his supervision. Lukas's testimony establishes that over a three-year period between October of 2010 and July of 2013, defendant attended 76 individual therapy sessions and 52 group sessions. (R. 10-11). In fact, Lukas acknowledged on cross-examination that defendant never missed a therapy session unless for illness or other excused reasons. (R. 39). Also, as required under the condition of supervised release, defendant submitted to five polygraph examinations. (R. 11).

The government argues that "participation" in the program required more than just "showing up" for the treatment sessions; rather, it required good faith, honest participation. In support, the government cites United States v. Porter, 2008 WL 5377946 (E.D.N.Y., Dec 23, 2008), for the proposition that "simply attending the required sessions is insufficient in and of itself to establish compliance" with a condition requiring participation in a sex offender treatment program. There, the court found a lack of meaningful participation where the defendant responded to questions evasively, made snide and sarcastic remarks during therapy, diverted other participants' attention from therapy to legal matters, was disruptive and failed to complete assignments because he did not consider them important. 2008 WL 5377946 at *9.

10

Porter, however, clearly is distinguishable from the case at bar. Here, there is no evidence that defendant was disruptive or uncooperative in his group or individual therapy sessions or that he ever tried to steer the group away from the topic at hand. Moreover, Lukas's testimony indicates that defendant's participation in the group and individual therapy sessions went beyond "mere attendance."

In addition to the 128 group and individual therapy sessions defendant attended, he also underwent a sex offender evaluation on October 15, 2010, in which he gave an account of his offense of conviction as well as other offenses. (R. 40-41). As already noted, he submitted to five polygraph examinations as required during the term of his supervision and submitted to a psychological examination by Dr. Cameron McGavin in 2011. (R, 43-44). He also consented to four modifications to the conditions of his supervision which resulted in, *inter alia*, 24 months of home detention with electronic monitoring.

Moreover, the record is replete with instances where defendant made open and honest disclosures about high risk behaviors in both group and individual therapy sessions. On January 21, 2011, defendant admitted that he was masturbating to images of children on television. (R. 31). On March 28, 2011, he acknowledged in group and individual therapy that he went into an adult bookstore. (R. 31-32). On June 27, 2011, he admitted that he was having sexual thoughts about children and revealed he had bought three books containing images of children. (R. 33-34). On July 22, 2013, he revealed that he was masturbating to the reality show "Dance Moms." (R. 34). On December 3, 2012, defendant admitted that he "went wild for three days" when his monitoring software was inactive. (R. 22).

11

While it is true that many of these revelations did not occur until after defendant was presented with polygraph results, there is no evidence that he attempted to answer questions evasively once he was confronted. Furthermore, Lukas testified that their protocol with polygraph results where deception is indicated is to "give the client a specified period of time to what I call clear those results up, specifically meaning to tell the truth." (R. 8).

From all indications defendant at least attempted to participate in the sex offender treatment program. While ultimately he was "unsuccessfully discharged" from that program because he did not meet its stated goals, there is a critical difference between failing to meet the provider's goals and failing to comply with a condition of supervision that mandates participation in a program. In Ms. Lukas's view, defendant did not succeed in his treatment program and the court respects her professional acumen and judgment. It is quite clear that throughout the program defendant struggled with his behavior and probably always will struggle with it. Nevertheless, the court does not believe that defendant's failure successfully to complete the treatment program equates to a failure to <u>participate</u> in that program. As a condition of his supervision, defendant was required to participate in a sex offender treatment program and the record in this case establishes that he did so. Accordingly, the court cannot find by a preponderance of the evidence that defendant violated the condition of his supervision that he participate in a sex offender treatment program despite his unsuccessful discharge from that program.

The remaining violation set forth in the pending petition alleges that defendant violated the condition of his supervision that he "shall abide by the provisions of the Computer Restriction and Monitoring Program" when he "removed the software monitoring his computer

AO 72
(Rev. 8/82)

in November 2012 and accessed child pornography." With regard to this violation, the government presented the testimony of United States Probation Officer Mohammad AbdoolRaman.

AbdoolRaman testified that he had visited defendant's residence on November 24, 2012, to verify that the monitoring software on defendant's computer was working properly. (R. 90-91). While there, AbdoolRaman plugged a thumb drive into defendant's computer and discovered that the computer monitoring software either had been removed or was not active. (R. 92). Defendant advised him that the "Geek Squad" from Best Buy had remotely connected to defendant's computer for repair work. (R. 93). Defendant acknowledged that he had been suspicious that the software may not have been working because he had not been seeing a pop-up box indicating that his computer was being monitored after the Geek Squad had worked on it. (R. 93-94). AbdoolRaman testified that defendant had indicated that the monitoring software had been off for "about a week" and stated that he had been on some sites he should not have been. (R. 94).

The evidence presented at the hearing is insufficient to establish that defendant violated the condition of his supervised release that he shall abide by the provisions of the Computer Restriction and Monitoring Program in the manner alleged in the petition, *i.e.*, by removing the monitoring software and accessing child pornography. The government conceded at the hearing that it had not produced any evidence to establish whether it was defendant or the Geek Squad who had disabled the monitoring software, (R. 111), and since has withdrawn any allegations that defendant accessed child pornography. Accordingly, revocation clearly is not warranted for the violation *as it is alleged in the petition.*

13

At the hearing, however, the government argued for the first time that defendant failed to abide by two additional terms of the Computer Restriction and Monitoring Program: (1) by failing to receive written permission prior to effecting repairs on his computer in violation of paragraph 16 of the Program; and, (2) by failing to contact his probation officer to notify her of any problems he was experiencing with the monitoring software which hindered his compliance in violation of paragraph 2 of the Program. (Gov't. Ex. 3). The government argues that revocation would be warranted for either or both of these new violations.

At the show cause hearing, defense counsel conceded that defendant did not obtain permission from the Probation Office prior to having repair work done on his computer. (R. 117-118). Nevertheless, defendant argues against revocation for this or any other technical violation for two reasons. First, he argues that this court has no jurisdiction to consider the new violations because they were not charged prior to the expiration of the term of supervised release. Moreover, he argues that the conduct underlying these "new" violations is the same as, or at least closely related to, the conduct for which defendant's conditions of supervision already were modified in December of 2012.

Defendant first contends that this court is without jurisdiction under 18 U.S.C. §3583(i) to revoke supervised release based on any violation that was not alleged until after the expiration of his term of supervised release. Pursuant to §3583(i), "the power of the court to revoke a term of supervised release for violation of a condition of supervised release ... extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation."

AO 72
(Rev. 8/82)

Here, defendant's three-year term of supervised release commenced on September 17, 2010, and expired on September 17, 2013. The pending petition alleging the original violations was filed on August 15, 2013, before the expiration of defendant's term of supervision, and the court plainly may consider the allegations set forth in that petition under §3583(i) even though the hearing on those violations was not held until October 30, 2013, after the term of supervision expired. However, it was at that hearing that the government raised for the first time the allegations that defendant violated the terms of the Computer Monitoring and Restriction Program by failing to receive prior written permission before having repair work done on his computer and by failing to notify the Probation Office of the problems that he was experiencing with the monitoring software. Defendant argues that because these new violations were not charged prior to the expiration of his term of supervision, the court has no jurisdiction to adjudicate them, even though they allegedly occurred during the supervised release term.

There is a split of authority as to whether this court's power to revoke supervised release extends to violations committed prior to the expiration of the term of supervised release but not charged during that term. While the Court of Appeals for the Third Circuit has not addressed the issue, several other circuit courts of appeals have held that a court's jurisdiction to revoke supervised release under §3583(i) extends to <u>any</u> violation committed prior to the expiration of the term so long as a petition alleging <u>some</u> violation was filed prior to its expiration.

In <u>United States v. Naranjo</u>, 259 F.3d 379, 383 (5th Cir. 2001), the court held that the plain language of §3583(i) "permits revocation based on *any* violation of a condition of supervised release occurring during the supervision term, even if *not* contained in a petition for

15

revocation filed during that term, *so long as* a warrant or summons was issued during that term on the basis of *an alleged violation.*" The court thus concluded that "there is no bar to amending the petition, post-term, to include additional grounds for revocation, so long as the defendant is given appropriate notice." Id.; see also United States v. Presley, 487 F.3d 1346 (11th Cir. 2007)(once releasee properly was before the court on petition filed prior to expiration of term, court had power to consider any violation committed during the term of release and revoke based upon it).

Conversely, other courts have held that a court's jurisdiction under §3583(i) extends only to the violations alleged in a petition filed prior to the expiration of the term of supervised release and jurisdiction does not extend to violations alleged in an amended petition filed following expiration even if those violations occurred during the term of supervision. United States v. Thomas, 2013 WL 5505363 (E.D.N.Y., Oct. 3, 2013); United States v. Downs, 2000 WL 1568598 (W.D.N.Y., Oct. 19, 2000)("section 3583(i) extends jurisdiction to revoke supervised release, after it had been scheduled to end, only when a warrant or summons is issued prior to the scheduled expiration of supervised release on the specific basis of the alleged violation upon which revocation is sought.")

This court need not address this issue at this time, however, because, even assuming this court has jurisdiction to adjudicate the new violations raised for the first time at the hearing, it nevertheless would not be inclined to revoke supervised release based on those technical violations. Under the guidelines, both of the new violations would be classified as Grade C violations. U.S.S.G. §7B1.1(a)(3). Pursuant to §7B1.3(a)(2), upon a finding of a Grade C violation, the court may revoke supervised or may extend the term of supervised release and/or

AO 72
(Rev. 8/82)

modify the conditions of supervision.

Here, the court for several reasons does not believe that any sanction would be warranted for defendant's failure to receive prior written permission prior to having his computer repaired or failing to notify the probation office of any problem he was experiencing with his monitoring software. First, these technical violations occurred in November of 2012, a year prior to the show cause hearing. Pursuant to U.S.S.G. §7B1.2(b), "the probation officer shall *promptly* report to the court any alleged Grade C violation *unless* the officer determines: (1) that such violation is minor, and not part of a continuing pattern of violations." (emphasis added). The fact that these violations were not reported for over a year establishes that the Probation Office in November of 2012 considered them to be "minor" and unworthy of being reported.

Furthermore, the Probation Office did file a Request for Modifying the Conditions or Terms of Supervision with Consent of the Offender on November 30, 2012, in which they alleged that defendant violated the Computer Restriction and Monitoring Program by "the removal of the monitoring software and viewing adult pornographic images." As a result of that violation, defendant consented to a modification prohibiting him from access to any computer equipment or any "on-line" computer service at any location. (Defendant's Exhibit 44).

The violation alleged in the Request for Modification filed on November 30, 2012, and the violations alleged for the first time at the show cause hearing a year later, all relate to the same set of circumstances occurring in early November of 2012 where defendant had the Geek Squad perform repair work on his computer, his monitoring software was deactivated and he

17

looked at inappropriate content. Defendant already has received a sanction for that conduct via the aforementioned modification to the terms of his supervision and the court does not believe that any additional sanction is warranted for technical violations arising from the same conduct but not alleged until a year later.

Because the violations for which the government now seeks revocation are technical, Grade C violations that could have, and should have, been reported to the court in November of 2012, and arose from the same conduct for which a modification to the conditions of supervision already was imposed, the court declines to revoke supervised release or impose any additional modifications to the terms of supervision based on these violations.

An appropriate order follows.

                                                Gustave Diamond
                                                United States District Judge

Dated: February 12, 2014

AO 72
(Rev. 8/82)